# THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID No. 2007006460 |
| | ) | |
| RAVON BLOW-ENTY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 28, 2022
Decided: November 29, 2022

## MEMORANDUM ORDER

On this 29th day of November 2022, upon consideration of Defendant, Ravon Blow-Enty's ("Defendant") Motion to Suppress Evidence ("Motion"),[1] the State's Response,[2] testimony and evidence adduced at a suppression hearing, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED** for the following reasons:

## I. Factual and Procedural History

1. The underlying facts in this matter are largely undisputed. A confidential informant ("CI") notified officer Thomas Kashner of the Newport Police Department that he/she was able to purchase heroin and/or fentanyl from a black male (the "Suspect"), who is aged 20-30, with the phone number 302-438-2179, and

---

[1] D.I. 33.
[2] D.I. 37.

is known by the name "Decoy."[3] The CI noted that the Suspect drives a white 4 door sedan. On July 14, 2020, the CI, in the presence of Officer Kashner, placed recorded telephone calls to the above number for the purposes of arranging a drug deal with the Suspect.[4] Later that day, the same number called the CI, with Officer Kashner present, to further discuss the logistics of the impending drug transaction. The voice on the later call matched the voice of the earlier call, both of which were heard by Officer Kashner. As a result of the phone calls, an arrangement was made for the CI to purchase illegal drugs from the Suspect on that same day at a 7-11 convenience store located at 201 W. Market Street in Newport, Delaware.[5] The Suspect stated on the phone call that he would arrive at the drug deal location in approximately 45 minutes.[6]

2. Several officers went to the 7-11 and, in advance of the Suspect's arrival, set up a surveillance platform for the purpose of identifying the Suspect and the vehicle described by the CI. The CI and Officer Kashner sat in an unmarked vehicle at the designated 7-11 store and waited approximately 30 minutes for the Suspect to arrive.[7] Both Officer Kashner and the CI had an unobstructed view of the 7-11 and

---

[3] State's Resp. ¶ 2.
[4] *Id.* ¶ 3.
[5] *Id.* ¶ 4.
[6] When the 7-11 location was proposed by the CI, the Suspect did not object. Instead, he stated that he would confirm the specific location when he arrived. The Suspect did arrive at the 7-11 location within the stated timeframe.

[7] Officer Kashner testified that during that time, the CI did not identify any other vehicle that

2

its parking spaces. When they observed a 2015 Acura sedan with PA registration LJA9517 and tinted windows pull into a parking space facing the store, the CI identified it as the Suspect's vehicle and stated "that's him" "that's him."[8] When the vehicle stopped, the officers quickly pulled their vehicles in behind the Suspect's vehicle.[9] The officers then approached the vehicle and made contact with the driver, who turned out to be Defendant, accompanied by a female passenger.[10]

3. Upon approach to Defendant's vehicle, the officers observed movements by the occupants near the center console and under the front seat.[11] The officers also noticed an odor of marijuana emanating from the vehicle.[12] The officers asked Defendant to step out and Defendant complied.[13] Defendant admitted that he possessed marijuana and did not have a medical marijuana card.[14] A small amount of marijuana was recovered from Defendant's person.[15] The officers then conducted a search of Defendant's vehicle and recovered the following contraband:

---

entered the 7-11. Nor was there any notification from the surveillance unit that they saw any other white sedan approaching.

[8] *Id.* ¶ 5.
[9] Def.'s Mot. ¶ 3.
[10] State's Resp. ¶ 6.
[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 7.
[14] *Id.*
[15] *Id.*

a. a .45 caliber Ruger handgun with obliterated serial number containing five rounds of ammunition concealed under the driver's seat;

b. 210 blue wax paper bags of heroin under the driver's seat;

c. 79 Xanax pills in the passenger side door for which Defendant admitted to not having a prescription.[16]

4. Defendant was indicted on the charges of Possession of a Firearm by a Person Prohibited, Carrying a Concealed Deadly Weapon, Drug Dealing, Tier 1 Drug Possession, a civil marijuana violation, and two Title 21 violations.[17]

5. On September 16, 2022, Defendant filed this Motion to exclude from use at trial all evidence seized from Defendant and his vehicle. The State filed a Response on October 25, 2022. The Court held a suppression hearing on October 28, 2022. This matter is now ripe for the Court's consideration and decision.

## II. Parties' Contentions

6. The State concedes that Defendant was arrested when his vehicle was blocked in by the police vehicles. Defendant argues that the police lacked probable cause to arrest him *at that time*, based solely on information provided by the CI, who

---

[16] *Id.* ¶ 8.
[17] *Id.* ¶¶ 1, 9.

4

is not a past-proven, reliable source. Alternatively, Defendant argues that, even taking into consideration what occurred after the police pulled in, including the direct contact made with and questioning of him, there was still no probable cause to search Defendant's vehicle. The State opposes both arguments, and asserts that the arranged drug deal and police action based on that arrangement sufficiently established probable cause for the arrest. The State also asserts that the above facts, as well as the odor of marijuana and Defendant's confession of possession of marijuana, created the required probable cause to search Defendant's vehicle.

## III. Standard of Review

7. Superior Court Criminal Rule 12(b)(2) permits a defendant to file a motion to suppress evidence prior to trial.[18] "On a Motion to Suppress, the State bears the burden of establishing that the challenged police conduct comported with the rights guaranteed [the defendant] by the United States Constitution, the Delaware Constitution, and Delaware statutory law."[19] The burden of proof on a motion to suppress is by a preponderance of the evidence.[20]

## IV. Analysis

---

[18] Super. Ct. Crim. R. 12(b)(2).
[19] *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Nov. 30, 2001) (internal citation omitted).
[20] *Id.* (internal citation omitted).

## A. Defendant's arrest was sufficiently supported by probable cause.

8. It is well established in Delaware, that police officers may arrest an individual that they have probable cause to believe has committed a crime.[21] In making such a determination, the Court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."[22] "Probable cause exists where the facts and circumstances within the arresting officer's knowledge, of which he has trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed."[23] The standard for probable cause is less than that required for a conviction at trial. Only a fair probability, not a *prima facie* showing, of criminal activity" is needed for probable cause.[24]

9. In this case, the totality of the circumstances as viewed from the standpoint of an objectively reasonable police officer would warrant the finding of probable cause to arrest Defendant at the time he approached the 7-11 parking lot. Officer Kashner received information from a CI who indicated that he/she could purchase

---

[21] *Stafford v. State,* 59 A.3d 1223, 1228 (Del. 2012) (internal citation omitted).

[22] *Id.* at 1229 (internal citation omitted).
[23] *Id.* (internal citation omitted).
[24] *Id.* (internal citation omitted).

heroin and fentanyl from an individual named "Decoy" and provided the Suspect's phone number. The CI also stated that the Suspect drove a white 4 door sedan. Rather than proceed solely on that information, Officer Kashner conducted several inquiries through the State's criminal database in an effort to connect the name "Decoy" to the phone number provided by the CI. When that was unsuccessful, the officer took additional corroborating steps to verify the information provided by the CI. Officer Kashner had the CI called the Defendant to set up a drug sale. The CI used the phone number that the CI provided and set up the transaction in the officer's presence.

10. Moreover, Defendant, using that same phone number, called the CI later that day, in the officer's presence, to set up the particulars of the drug deal. Officer Kashner testified that the voice on the other end of both calls to and from the Suspect was the same. Further, the information obtained by Officer Kashner from the second call was as follows: (i) the CI was going to purchase a set amount of fentanyl and heroin from Defendant; (ii) The CI proposed a specific 7-11 location; and (iii) Defendant stated that he would be arriving in approximately 45 minutes. In addition, the CI while sitting in the unmarked police vehicle with Officer Kashner, immediately and unhesitatingly identified Defendant and Defendant's car, which matched the CI's description, upon his approach to the 7-11. There were no false identifications of other similar vehicles approaching the 7-11 store by the CI or the

surveillance team, during their reconnaissance. Based upon the totality of the circumstances and information then available to the officers, there was sufficient probable cause, fortified with adequate corroboration, to believe that the Suspect at the 7-11 was the same individual that had arranged the drug deal with the CI, and that he was there for the purpose of consummating the illegal drug transaction. Based on all of these factors, there was probable cause to arrest the Defendant as he pulled into the 7-11 parking lot.

**B.      There was probable cause to search Defendant's vehicle.**

11.    As an alternative argument, Defendant contends that there was no probable cause to search Defendant's vehicle, taking into consideration all facts leading up to the search, including the arranged drug deal and the subsequent contact with and questioning of Defendant. The Court finds no merit to this argument.

12.   Under Delaware law, a search of "any area of the vehicle" is authorized "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity."[25]   Here, as determined above, the police made a valid arrest based on sufficient probable cause that Defendant was in possession of and about to engage in a preapproved illegal drug transaction. Moreover, and in addition to the pre-arrest probable cause that was sufficient to search Defendant's vehicle,  upon approach to

---

[25] *Hall v. State*, 981 A.2d 1106, 1114 (Del. 2009) (quoting *Arizona v. Gant*, 556 U.S. 332, 347 (2009)).

8

Defendant's vehicle, the officers noticed movements by Defendant near the center console and under the front seat and smelled the odor of marijuana. When questioned by the police, Defendant admitted that he was in possession of marijuana and that he did not have a medical marijuana card.[26] These facts are sufficient to establish probable cause to search Defendant's vehicle.[27]

## V. Conclusion

For the reasons stated above, the Court finds that the police possessed probable cause to arrest Defendant based upon information provided by the CI and the police officer's independent corroboration of that information. There was also probable cause for the search of Defendant's vehicle. Therefore, Defendant's Motion to Suppress is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

Original to Prothonotary

Cc: Jeff Rigby, Esq., DAG
Thomas Peterson, Esq., Counsel for Defendant

---

[26] Although not raised by the State, the Court notes that once probable cause for the arrest was established, the subsequent search of the automobile would be justified as a valid search incident to arrest. *See Tingle v. State*, 840 A.2d 642 (TABLE), 2004 WL 47030 at *4 (Del. Jan. 6, 2004).

[27] *See Valentine v. State*, 207 A.3d 166 (TABLE), 2019 WL 1178765, at *1 (Del. March 12, 2019) (holding search of defendant's vehicle valid after the police stopped the car and smelled marijuana).